SCHULTES REAL ESTATE COMPANY, INC v CURIS

Docket No. 91452. Submitted October 14, 1987, at Detroit. Decided
June 20, 1988.

Schultes Real Estate Company, Inc., brought an action in the 32-
A District Court against Michael Curis and Diane Curis to
recover a brokerage commission allegedly earned by plaintiff.
The court found in favor of plaintiff and against Michael Curis.
He appealed and the Wayne Circuit Court, Cynthia D. Ste-
phens, J., affirmed. Curis appealed by leave granted.

The Court of Appeals *held:*

An appellate court will set aside a trial court's findings of
fact only when those findings are clearly erroneous. A finding is
clearly erroneous when, although there is evidence to support
it, the reviewing court on the entire evidence is left with a
definite and firm conviction that a mistake has been made. In
applying this rule, appellate courts should give special defer-
ence to the trial court's findings when they are based upon its
assessment of the witnesses' credibility. A review of the evi-
dence left the Court of Appeals with the belief that the trial
court's findings of fact were clearly erroneous.

Reversed.

J. C. Timms, J., dissented. He would give greater deference to
the findings of the trial court, which was in a better position to
assess the credibility of the witnesses. He would affirm.

1. Appeal — Findings of Fact — Court Rules.

An appellate court will set aside a trial court's findings of fact
only when those findings are clearly erroneous; a finding is
clearly erroneous when, although there is evidence to support
it, the reviewing court on the entire evidence is left with a
definite and firm conviction that a mistake has been made; in
applying this rule, appellate courts should give special defer-

References

Am Jur 2d, Appeal and Error §§ 820 *et seq.*

Am Jur 2d, Brokers §§ 38 *et seq.*

Am Jur 2d, Statute of Frauds §§ 44 *et seq.*

Agreement between brokers as within statute requiring agreements
for commissions for the sale of real estate to be in writing. 44
ALR2d 741.

ence to the trial court's findings when they are based upon its assessment of the witnesses' credibility (MCR 2.613[C]).

2. FRAUDS, STATUTE OF — BROKERS.

The mere fact that the parties to an agreement to pay a commission in the sale of real property are licensed brokers does not, of itself, remove the contract from the requirements of the statute of frauds (MCL 566.132[e]; MSA 26.922[e]).

*John C. Schultes,* for plaintiff.

*Miro, Miro & Weiner, P.C.* (by *Andrew S. Conway*), for defendant.

Before: J. H. GILLIS, P.J., and GRIBBS and J. C. TIMMS,* JJ.

J. H. GILLIS, P.J. Defendant-appellant appeals by leave granted from the circuit court's order affirming the district court's judgment awarding plaintiff a brokerage commission. We reverse.

On June 28, 1982, plaintiff obtained a listing agreement from Doctor and Mrs. Pokorny, the land contract vendees, of the home at 80 Stillmeadow in Grosse Pointe Shores. The Pokornys agreed to pay plaintiff a seven percent commission if it sold their interest in the home. Plaintiff's agent Paula Moore attempted to sell the home.

Defendant Michael Curis (hereinafter defendant), a licensed real estate broker, made an offer to Moore on September 30, 1982. The offer provided that plaintiff's commission, as the selling broker, would be reduced from seven percent to three and one-half percent. Defendant, as the purchasing broker, would waive his three and one-half percent commission in order to make the offer more attractive to the seller and to reduce defendant's cost. Defendant, who was purchasing the home with his wife, was also acting as his own

---

* Circuit judge, sitting on the Court of Appeals by assignment.

broker on behalf of Curis Investment Company. Moore presented defendant's offer to the Pokornys, who rejected it.

On October 12, 1982, defendant paid for a title search and learned that the Pokornys owed city and county taxes and had two mortgages and an attorney's lien on the property. Defendant also learned that the land contract vendor was Doctor Joseph Sazyc.

On October 27, defendant made another offer. This offer was higher than his first offer, but its terms were similar. The Pokornys rejected defendant's second offer.

On December 20, 1982, defendant purchased the home directly from Sazyc. He then foreclosed on the Pokornys' land contract and, when they failed to redeem, he received the home. Plaintiff attempted to sell the property until the redemption period expired.

What occurred between the time the Pokornys rejected defendant's second offer and defendant purchased the home is in dispute.

At trial, defendant testified that he requested a meeting with Alice Schultes, plaintiff's manager, because he was dissatisfied with Moore's handling of the transaction. Defendant claimed that Moore kept calling him to inform him that there were other higher offers on the home and, if he did not increase his offer, the home would be sold to someone else. Defendant then asked Ms. Schultes to handle the sale. Defendant claimed that Ms. Schultes then suggested a meeting between Sazyc, the Pokornys and defendant to see if an arrangement could be worked out where Sazyc would reduce his demands and enable the Pokornys to receive some money from the sale and, thereby, secure a sale to defendant and a commission for plaintiff. A meeting was set up; defendant did not

know who arranged the meeting. Before the meeting, Moore called defendant and told him that she was bringing a commission letter for him to sign before the meeting could take place. Defendant stated that he would look the letter over. Defendant attended the meeting. The Pokornys were not present; however, their attorney was. Defendant was surprised that the Pokornys were not present. At the lunch meeting, nothing was resolved; however, Moore presented defendant with an agreement providing that he would pay plaintiff a commission if he purchased the home directly from Sazyc. Defendant read the agreement and gave it to his attorney, Paul Bringer. Because defendant had never agreed to pay a commission, the agreement was not signed. Defendant paid for the lunch. Defendant claimed that he was never asked to sign the agreement thereafter or contacted by Ms. Schultes. Defendant was contacted by Moore on the day after he signed the purchase agreement with Sazyc. At that time, she told defendant that plaintiff had received better offers for the Pokornys' interest and that she could not represent defendant unless he signed the agreement. Defendant told Moore that he had already purchased the property.

Ms. Schultes testified that defendant asked for a meeting with her. Defendant asked her to personally handle the transaction. At that meeting, defendant also asked for her help in obtaining the home. Ms. Schultes suggested some higher prices to defendant and also suggested that they could work with Sazyc to mitigate his stance on the amount owing on the land contract. Thereafter, Moore contacted Ms. Schultes and told her that defendant wanted to meet with Sazyc because defendant could not spend more money than he had offered the Pokornys. Defendant was unable to

reach Sazyc and, therefore, asked for plaintiff's
help. Defendant had another meeting with Ms.
Schultes. He told her "I will take care of you."
Although no amount was mentioned, Ms. Schultes
claimed that it was understood that they were
talking about one-half of the seven percent com-
mission. The meeting between Sazyc and defen-
dant took place on November 12. Prior to the
meeting plaintiff's office prepared the following
agreement:

> It is hereby agreed that if an agreement results
> in a sale of property known as 80 Stillmeadow by
> and between Dr. Czak [sic] and Michael Curis, that
> a commission of 3.5% of the sale price shall be
> paid to Schultes Real Estate, Inc.

Dr. Czak [sic]
_____

Michael Curis
_____

Schultes Real Estate, Inc.
_____

Ms. Schultes claimed that defendant asked Moore
to bring the drafted agreement to the lunch meet-
ing. Defendant agreed to sign the agreement if
Sazyc appeared at the meeting. Ms. Schultes could
not explain why Dr. Sazyc's name was on the
agreement even though only defendant had alleg-
edly agreed to it. Ms. Schultes conceded that Sazyc
never listed the property with plaintiff.

The next morning, Ms. Schultes found out from
Moore and Bill Pratt, the Pokornys' friend and
attorney who had been present at the lunch meet-
ing and who was also a real estate agent for
plaintiff, that the agreement was unsigned. Ms.

Schultes' subsequent efforts to contact defendant or Bringer by telephone were unsuccessful and she later learned from the Pokornys that defendant had purchased the property from Sazyc. Plaintiff continued its attempts to sell the Pokornys' interest until the redemption period was over.

Moore testified that, after the Pokornys rejected defendant's second offer, defendant called her and asked her to set up a meeting with Sazyc. Moore obtained Sazyc's unlisted telephone number from the Pokornys. Defendant suggested meeting at Paul's Chop House but, because it was too far, the meeting was held at Pernie's. Moore claimed that defendant promised to cover plaintiff's commission if Moore brought Sazyc to the meeting. Moore, defendant, Bringer, Pratt and Sazyc were at the meeting. Moore represented plaintiff. Pratt, although also plaintiff's agent, represented the Pokornys because they were unable to attend. Moore testified that she brought the agreement concerning the commission to the meeting. Moore claimed that Ms. Schultes and defendant had arranged for preparation of the document and had agreed over the telephone that defendant would sign it before the meeting. Moore asked Curis to sign the agreement two or three times. Defendant declined to do so, stating: "Don't worry, I'll handle it later." Moore did not stop the meeting because Sazyc was there. After the meeting, she tried to call defendant and left messages, but he never returned her calls.

MCL 566.132(e); MSA 26.922(e) provides:

> In the following cases an agreement, contract or promise shall be void, unless that agreement, contract or promise, or a note or memorandum thereof is in writing and signed by the party to be charged therewith, or by a person authorized by him:

* * *

(e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.

In *Thompson v Carey's Real Estate,* 335 Mich 474; 56 NW2d 255 (1953), our Supreme Court held that no written agreement concerning a commission was required where the plaintiff, a real estate agent employed by the defendant, agreed to receive as compensation a percentage of the commissions on sales originated by him. Our Court noted that the purpose of the statute was to protect real estate owners against unfounded or fraudulent claims of brokers and, therefore, compensation due from a real estate broker to his salesman-employee was not the type of commission contemplated under the statute. See also *Borisoff v Schatten,* 335 Mich 684; 57 NW2d 430 (1953).

In *Benzos v Borisoff,* 339 Mich 12; 62 NW2d 461 (1954), the plaintiff alleged that he and the defendant, another real estate broker, entered into an oral agreement whereby the defendant promised to pay the plaintiff fifty percent of the commission derived from a sale of real estate in exchange for the plaintiff's information that the real estate was on the market. The plaintiff conveyed the information to the defendant and, thereafter, the defendant sold the property and garnered a $2,500 commission which he refused to share with the plaintiff. Our Supreme Court noted that there was no reason for the Legislature to require an agreement between brokers for services rendered for their mutual benefit to be in writing and, therefore, it held that compensation due from one real estate broker to another is not within the contemplation of the statute of frauds.

Defendant attempts to distinguish *Benzos,* claim-

ing that it involved a broker's promise to furnish a customer in exchange for one-half of a written commission to be acquired from the landowner. Defendant claims that this case involves protection of a landowner from false claims of a commission and, therefore, he falls under the protection of the statute of frauds even though he was a real estate broker. Defendant relies on *Phillippe v Shapell Industries, Inc,* 207 Cal Rptr 483 (1984), where the California Court of Appeals held that the purchaser's status as a licensed real estate broker was irrelevant because the statute of frauds protected purchasers as well as sellers of real estate from false claims of commission by real estate agents or brokers.

The district court found that defendant met with Ms. Schultes and asked her to help him buy the home. Thereafter, a meeting with Sazyc was suggested and defendant promised a commission to plaintiff if a sale was made between Sazyc and defendant. Moreover, the trial court found that defendant was acting as a broker when he made the promise and, therefore, no writing was required. The circuit court affirmed.

An appellate court will set aside the trial court's findings of fact only when those findings are clearly erroneous. MCR 2.613(C). See also *Michigan Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield of Michigan (After Remand),* 118 Mich App 505, 513; 325 NW2d 471 (1982), lv den 417 Mich 1096 (1983). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Michigan Ass'n of Psychotherapy Clinics, supra,* p 513. In applying this rule, appellate courts should give special deference to the trial court's findings when they are

based upon its assessment of the witnesses' credibility. MCR 2.613(C). See also *In re Fritz Estate*, 159 Mich App 69, 75-76; 406 NW2d 475 (1987).

We believe that the trial court's findings of fact were clearly erroneous. First, we do not believe that defendant promised to pay plaintiff's commission in the event that he purchased the property from Sazyc. While Ms. Schultes' and Moore's testimony conflicted with defendant's on this point, the fact that Pratt represented the Pokornys at this meeting supports defendant's claim that the meeting was intended only to persuade Sazyc to reduce his demands concerning the Pokornys' land contract so that a sale could be made between the Pokornys and defendant. If a direct sale were to be made between defendant and Sazyc, there would be no need for the Pokornys or their representative to be present.

In addition, Ms. Schultes and Moore differed in their version of why the commission agreement was prepared on November 12. While Ms. Schultes testified that Moore asked her to prepare the agreement pursuant to defendant's instructions, Moore testified that she made no such request and that the agreement was drafted by Ms. Schultes pursuant to a prior telephone conversation Ms. Schultes had with defendant.

Furthermore, we note that the agreement itself provided for signature by defendant, as an individual, and Sazyc. As Ms. Schultes and Moore conceded, there was no agreement with Sazyc for a commission. Given these facts, we can only conclude that the meeting was scheduled for the purpose described by defendant. When Ms. Schultes and Moore realized that defendant and Sazyc might reach an agreement not involving a commission to be paid to plaintiff, they drafted the commission agreement which defendant refused to

sign because he had not agreed to pay a commission if he purchased the home from Sazyc directly.

Assuming that defendant made such a promise, we also hold that the trial court clearly erred when it found that defendant was acting as a broker in doing so. We note that defendant was attempting to purchase the property for his own use. Ordinarily, defendant as a purchaser would not pay a commission on the sale of property he purchased; however, in making his offers to the Pokornys, defendant acted as a broker to reduce the amount of commission the Pokornys would have to pay and, thereby, reduce the cost of the home to himself. But, in defendant's dealings with Sazyc, defendant received no commission which he could divide with plaintiff. Instead, defendant would have to pay the purchase price to Sazyc and, then, pay a separate and additional three and one-half percent commission to plaintiff. Therefore, we conclude that defendant was acting as an individual purchaser if such a promise was made and, even though he was a licensed real estate broker, he was entitled to the protection of the statute of frauds. See *Phillippe, supra.* Compare *Benzos, supra,* where the defendant was clearly acting as a real estate agent for a commission.

Reversed.

GRIBBS, J., concurred.

J. C. TIMMS, J. *(dissenting).* I respectfully dissent.

Although I agree with the majority as to the role of the appellate court in reviewing trial courts' findings, I do not find that the trial court's findings of fact are clearly erroneous. MCR 2.613(C); *Michigan Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield of Michigan (After Remand),* 118 Mich App 505, 513; 325 NW2d 471 (1982), lv den 417 Mich 1096 (1983).

In cases such as this where facts are in dispute, I believe we should give considerable deference to the findings of the trial court which has had an opportunity not only to assess the facts, but also the credibility of the witnesses. MCR 2.613(C); *In re Fritz Estate,* 159 Mich App 69, 75-76; 406 NW2d 475 (1987).